**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Martice Deshawn Wallace, | No. CV-21-01180-PHX-DJH (JZB) |
| Petitioner, | **ORDER** |
| v. | |
| David Shinn, et al., | |
| Respondents. | |

On July 7, 2021, Petitioner Martice Deshawn Wallace ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition") (Doc. 1).  On September 22, 2021, Respondents filed a Response (Doc. 16), and on October 19, 2021, Petitioner filed his Reply (Doc. 17).  Following his Reply, Petitioner filed a Motion for Summary Judgment (Doc. 18) and a Separate Statement of Facts (Doc. 19).  Respondents responded (Doc. 22) and Petitioner filed his reply (Doc. 23).  With permission of the Court, Petitioner then filed an Amended Petition (Doc. 35).

On April 8, 2022, Magistrate Judge John Z. Boyle issued a Report and Recommendation ("R&R") recommending denial and dismissal of the Amended Petition and the Motion for Summary Judgment (Doc. 36).  Petitioner has filed objections (Docs. 41, 44), and Respondents have filed their response (Doc. 42).

## I.    Standard of Review

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court "must

review the magistrate judge's findings and recommendations *de novo* if objection is made, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). The Court is not required to conduct "any review at all. . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

## II. Factual Background

The Arizona Court of Appeals provided the following background facts from Petitioner's case[1]:

> While patrolling a light rail stop, a security officer saw Wallace bleeding from an apparent "gash" to his head. After approaching Wallace, the security officer radioed for assistance. A responding fireman examined Wallace's head wound and, given the amount of blood, called for an ambulance.
>
> Once the ambulance arrived, Wallace voluntarily got inside and sat on a bench next to a gurney. Although he was instructed to lie down on the gurney, Wallace refused.
>
> When a paramedic told Wallace that he needed to lie down for his own safety, Wallace became verbally abusive, grabbed trauma shears—a particularly sharp scissor used for cutting clothing, belts, and boots off injured patients in emergencies—and swung them at the paramedics.[2] Overhearing the commotion, a fireman opened the ambulance's side door, and Wallace jumped out. He was quickly disarmed, however, and detained.
>
> The State charged Wallace with two counts of aggravated assault, both class three felonies. In his own defense, Wallace testified that a paramedic struck him in the face while he was in the back of the ambulance. He explained that he only grabbed the trauma shears to protect himself because he was blind in one eye and his "biggest fear" was sustaining an injury to his good eye.
>
> After trial, a jury found Wallace guilty on both counts. The jury also found two aggravating factors: (1) the offenses were dangerous, and (2) Wallace was on felony probation at the time of the offenses. After Wallace admitted two prior felony convictions, the superior court sentenced him as a

---

[1] The appellate court's stated facts are entitled to the presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); *Runningeagle v. Ryan*, 686 F.3d 758, 763 n.1 (9th Cir. 2012). This presumption can be rebutted by clear and convincing evidence. *Id.*

[2] Petitioner disputes that he swung the shears at the paramedics and says he only held them up. As discussed more herein, Petitioner cannot meet his burden of rebutting the presumption of correctness by clear and convincing evidence; nor does the distinction matter for purposes of his aggravated assault convictions.

1
2
category 3 non-dangerous offender and imposed two 20-year maximum terms of imprisonment, each to run concurrently, with no presentence incarceration credit.

3
(Doc. 16-1 at 3).

4
**III.    Petitioner's Objections**

5
**1.    Ground One Objections**

6
7
8
9
10
11
12
13
14
15
In Ground One, Petitioner asserts his "conviction was obtained in violation of the 4th and 14th Amendments . . . to be free from unreasonable seizures and excessive force." (Doc. 35 at 6).  He says that after refusing transport to the hospital, he was unlawfully seized when firefighters and paramedics coerced him in an ambulance, tried to force him to lay on a gurney, and blocked his attempts to leave the ambulance.  (*Id.* at 8–10).  In his Reply in support of his Objection, Petitioner says he "was entitled to exclusion of Riggs and Warren's testimony in regards to his alleged conduct because their testimony was 'fruit of the poisonous tree' directly derived from their unlawful seizure of Wallace's person inside their ambulance."  (Doc. 44 at 5).  He says his unlawful seizure in the ambulance was the "only cause of Petitioner being charged, tried, and convicted."  (Doc. 35 at 8–10).

16
17
18
19
20
21
22
23
The Magistrate Judge found Ground One was unexhausted for failure to alert the state appeals court of his federal claim, procedurally defaulted without excuse, and not cognizable under *Stone v. Powell*, 428 U.S. 465 (1976).  (Doc. 36 at 8).  In his Objection, Petitioner says his claim should not be barred under *Stone* because he did not get a full and fair opportunity to litigate it in state court.  (Doc. 41 at 2).  He says his motions to suppress and dismiss were denied without an evidentiary hearing and without addressing the merits of the claim.  (*Id.*)  He also says any procedural default should be excused by his appellate counsel's failure to raise the claim on appeal.  (*Id.*)

24
**A.    Petitioner's claim is barred by *Stone***

25
26
27
28
Where a state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a petitioner is not entitled to federal habeas relief on the grounds that evidence obtained in an unconstitutional seizure was introduced at trial.   *Stone*, 428 U.S. at 494.  "The relevant inquiry is whether petitioner had the opportunity to litigate his claim,

not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996). Petitioner raised his unlawful seizure claim prior to trial in a motion to suppress. (Doc. 36 n. 2; Doc. 16-5 at 12, Ex. U). The trial judge set a Status Conference on the motion and several other pre-trial motions. (Doc. 16-5 at 20, Ex. V). The minute entry from the Status Conference says that discussion was held on the motions, and they were denied. (*Id.* at 21). The judge also found the discussion and rulings at the Status Conference mooted Petitioner's request for oral argument on his motions. (*Id.*) (noting "Defendant's *pro per* Motion Requesting Oral Argument on All Motions is satisfied by today's hearing"). Contrary to his protestations, Petitioner clearly had the ability and opportunity to raise his Fourth Amendment allegations to the trial judge. Petitioner nonetheless says the trial court's denial of his motion to suppress was in error; that the state court judge should have set an evidentiary hearing under Arizona Rule of Criminal Procedure 16.2(c)(1–4), and thus there was "an unconscionable breakdown" in the state court's corrective process. (Doc. 44 at 7). The Court does not agree, and to the extent that Petitioner disagreed with the trial judge's rulings, he was also provided the opportunity to raise the issues on appeal. He did not. *Mack v. Cupp*, 564 F.2d 898, 901 (9th Cir. 1977) (noting that the opportunity to litigate "extends to appellate review and other matters unrelated to the need for a state court hearing"). Any breakdown was a result of Petitioner's failure, not the state's failure to supply a process to correct a perceived error. Because he had the opportunity to raise his Fourth Amendment claim in state court and did not, Petitioner's claim is barred from being heard by a federal habeas court under *Stone*.

**B.   Claim One is defaulted without excuse**

Moreover, even if cognizable under *Stone*, the Court also agrees with the Magistrate Judge's conclusion that the claim is unexhausted and procedurally defaulted without excuse. As noted above, Petitioner did not raise this claim on direct appeal in his *pro per* brief. In his Reply, Petitioner seeks to excuse his procedural default by arguing that his "opportunity to raise his claim on direct appeal was stripped from him as result of ineffective assistance of appellate counsel" who failed to "raise all meritorious issues on

1    appeal." (Doc. 44 at 2; Doc. 1 at 21–22). [3]

2        "[A] petitioner may overcome procedural default by making an adequate showing
3    of cause and prejudice for his failure to exhaust his state court remedies." *Smith v. Baldwin*,
4    510 F.3d 1127, 1139 (9th Cir. 2007) (internal quotations omitted).  Ineffective assistance
5    of appellate counsel can establish cause to excuse a procedural default, but the error must
6    rise to the level of a constitutional violation of the right to counsel under *Strickland v.*
7    *Washington*, 466 U.S. 668 (1984).  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  The
8    objective reasonableness of counsel's failure to pursue claims on appeal depends upon the
9    merits of the claims; appellate counsel does not have a constitutional duty to raise every
10   nonfrivolous issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745, 751–54 (1983).  *See also*
11   *Rupe v. Wood*, 93 F.3d 1434, 1444–45 (9th Cir. 1996) ("[T]he failure to take a futile action
12   can never be deficient performance.").

13       Upon this Court's review of the record, Petitioner's claim that he was
14   unconstitutionally seized lacks merit and thus the procedural bar is not excused by
15   counsel's failure to raise the claim on appeal.  The Fourth Amendment protects "[t]he right
16   of the people to be secure in their persons, houses, papers, and effects, against unreasonable
17   searches and seizures[.]" U.S. Const. amend. IV.  A seizure "in the constitutional sense . .
18   . occurs when there is a restraint on liberty to the degree that a reasonable person would
19   not feel free to leave." *Doe ex rel. Doe v. Hawaii Dep't of Educ.*, 334 F.3d 906, 909 (9th
20   Cir. 2003).  The Amendment prohibits only unreasonable seizures.  Whether a seizure is
21   reasonable or unreasonable is an objective query requiring the Court to balance "the nature
22   and quality of the intrusion on the individual's Fourth Amendment interests against the
23   countervailing government interests at stake." *United States v. Enslin*, 327 F.3d 788, 796

24   _____

     [3] Petitioner asserted an ineffective assistance of appellate counsel claim on the same bases
25   in his PCR Petition.  (Doc. 16-1 at 92).  The PCR court found his claim was without merit,
     and that in light of the "overwhelming evidence of Defendant's guilt," Petitioner could not
26   establish that the alleged failure to raise the claim on appeal prejudiced him under
     *Strickland*.  (Doc. 16-2 at 37).  Notwithstanding the state court's merit determination of
27   this claim, the Ninth Circuit has held that AEDPA deference to the state court
     determination is not appropriate on federal habeas review, and that instead, a federal habeas
28   court should review an IAC claim raised to excuse a procedural default *de novo*.  *Visciotti
     v. Martel*, 862 F.3d 749, 769 (9th Cir. 2016).   This Court thus applies a *de novo* standard
     of review to the claim.

(9th Cir. 2003) (quotation omitted).

The Supreme Court has "never limited the [Fourth] Amendment's prohibition on unreasonable searches and seizures to operations conducted by the police." *New Jersey v. T.L.O.*, 469 U.S. 325, 335 (1985) (discussing Supreme Court precedent applying the Fourth Amendment to other government actors such as firefighters and building inspectors). But there are few cases applying the Fourth Amendment to paramedics like the parties involved here. Some district courts in the Ninth Circuit have used a "purpose and nature of conduct" test from the Sixth Circuit to determine whether paramedics have violated an individual's Fourth Amendment right against unreasonable seizures. *See e.g.*, *Perez v. City of Fresno*, 2022 WL 826990, *31 (E.D. Cal. March 18, 2022) (finding no unconstitutional seizure took place where "[t]here [w]as nothing before the Court to suggest that [the paramedic] was attempting to do anything other than effectuate the medical transport and care of [defendant] . . . so that [defendant] could receive further and appropriate medical help at a hospital"); *Martinez v. City of Los Angeles*, 2021 WL 4497506, *7 (C.D. Cal. 2021) (dismissing Fourth Amendment seizure claim alleging seizure by paramedics occurred during "the typical emergency response to a semi-conscious woman"). *See also Peete v. Metro. Gov't of Nashville and Davidson Cty.*, 486 F.3d 217, 220 (6th Cir. 2007) (finding no Fourth Amendment violation where paramedics merely responded to a medical emergency and "were not acting to enforce the law, deter or incarcerate").

Applying this test to the evidence in the record shows that Petitioner was not unconstitutionally seized by paramedic firemen Todd Riggs and Daniel Warren. The evidence relevant to the reasonableness of Petitioner's alleged seizure was the trial testimony of Petitioner, Riggs, Warren, other paramedic and fire personnel, and a Valley Metro security guard. Beyond Petitioner's own testimony, there was no evidence showing that Petitioner was improperly coerced into getting into the ambulance or that he was prevented from leaving the ambulance. The other witnesses testified that Petitioner got into the ambulance voluntarily so he could be transported to the hospital for further medical attention. Testimony from both sides showed that the argument in the ambulance between

Petitioner and Riggs and Warren started when Petitioner refused to comply with their request that Petitioner move from the jump seat to the gurney during his transport to the hospital, per safety protocol.   Petitioner's testimony regarding what occurred in the ambulance differs from the two paramedics' testimony, however.   Petitioner testified that he tried to exit the ambulance at that time, but the victims blocked him, grabbed his wrist, and started punching him.   He says he grabbed trauma shears to protect himself.   The victims testified that Petitioner became verbally abusive when they asked him to move to the gurney and began swinging trauma shears at them.   Another paramedic ultimately pulled Petitioner out of the ambulance from a side door.

The jury was able to assess the credibility of each witness at trial.   Prior to receiving the case, the jury was instructed on justifications for self-defense and non-justifications for threat or use of force.   Because the jury ultimately found Petitioner guilty of two counts of aggravated assault, it necessarily resolved any conflicting testimonial evidence against Petitioner and rejected Petitioner's asserted justifications for wielding the trauma scissors against Riggs and Warren.   The circumstances show that Petitioner was in the ambulance so that Riggs and Warren could "effectuate the medical transport and care of" Petitioner, not for the purpose of interfering with his liberty.   *Perezi,* 2022 WL 826990, at *31.   Nor were they "acting to enforce the law, deter or incarcerate" Petitioner.   *Peete*, 486 F.3d at 220.   Ultimately, the interest in providing the care Petitioner needed outweighed any intrusion on his liberty rights.

In sum, Petitioner's detainment in the ambulance was not unreasonable under the Fourth Amendment and therefore appellate counsel was not deficient in failing to raise the claim on appeal.   Petitioner's claim is defaulted without excuse and his objection as to Ground One is overruled.   For the same reasons, Petitioner's objections that the R&R did not address his claim in Ground Two that his appellate counsel was ineffective for failing to raise his unlawful seizure claim on appeal (Doc. 41 at 3) is also overruled.

### 2.    Ground Two Objections

In Ground Two, which was not included in Petitioner's Amended Petition, but was

resolved by the Magistrate Judge out of an abundance of caution, Petitioner argues grounds on which his trial, PCR, and appellate counsel were ineffective. The R&R recommends denying each claim.

Petitioner first says the R&R erred when it found his IAC claim that his trial counsel "failed to pursue competency at the time of offense defense" was unexhausted. (Doc. 41 at 3). Petitioner says he only "added a few additional words to his habeas claim" and that it did not "fundamentally alter" the claim he made to the PCR court that his counsel was ineffective in failing to have his competency to stand trial evaluated. (Doc. 41 at 3). The Court disagrees. As the Respondents point out, "there is very little relationship between a defendant's competency to stand trial and his criminal responsibility for the crime." *Bishop v. Superior Ct.*, 724 P.2d 23, 26 n.3 (Ariz. 1986). The R&R did not err in finding that Petitioner failed to exhaust his IAC claim based on his "competency at the time of offense defense." Moreover, the Court agrees with the R&R that even if exhausted, Petitioner failed to substantiate his claims that he was incompetent at the time of the offense and thus cannot show deficient performance or prejudice. (*See* Doc. 36 at 18–19). Petitioner does not address the evidentiary deficiency in his Objection or Reply. Because this claim is insubstantial, Petitioner's objection to the R&R's conclusion that PCR counsel was not deficient in failing to raise trial counsel's ineffectiveness is also overruled.

Petitioner next objects that the R&R did not address his argument that his PCR counsel's conflict of interest as a part-time City of Phoenix attorney should excuse the default of this claim. This is not error. As noted above, the R&R determined that Petitioner's underlying IAC claim was insubstantial, thus, Petitioner could not show he was prejudiced by his trial counsel's failure to pursue the competency at the time of offense defense. PCR counsel's conflict of interest would not have changed the substantiality of the underlying claim. Notwithstanding, the Court also rejects Petitioner's conflict of interest argument on the merits. An ineffective assistance of counsel claim based on a conflict of interest requires a petitioner to show "that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). An

"actual conflict of interest" means "a conflict that affected counsel's performance—as opposed to a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002) (emphasis in original). In *Mickens* "the Supreme Court explicitly limited this presumption of prejudice for an actual conflict of interest. . . to cases involving 'concurrent representation'"—that is, simultaneous representation of two or more defendants. *Rowland v. Chappell*, 876 F.3d 1174, 1192 (9th Cir. 2017) (citing *Mickens*, 535 U.S. at 175). Petitioner cannot establish prejudice here because this is not a matter involving concurrent representation. Petitioner does not argue that Ms. Bain concurrently represented him and the City of Phoenix. Although Ms. Bain may have represented Petitioner and a defendant being prosecuted by the City of Phoenix (which Petitioner does not substantiate), this would not be an actual conflict of interest of the kind identified in *Mickens*. This objection too, is overruled.

Petitioner next contends that the R&R erred by finding his trial counsel's failure to interview all witnesses listed in the police report was not a viable IAC claim. As he did in his Amended Petition, Petitioner argues that the testimony he elicited during his civil trial from Phoenix Fire Captain Tim Jones ("Captain Jones") would have probably changed the verdict and thus should have been considered by the Magistrate Judge to establish cause and prejudice for his PCR counsel's failure to argue that his trial counsel failed to interview the witnesses in the police report. He says that Captain Jones corroborated his testimony that he only *held* the trauma shears in front of him and did not swing them at Riggs and Warren while in the ambulance. But the Magistrate Judge explained in his R&R that the State was never required to show Petitioner swung the shears to prove its aggravated assault charge. (Doc. 36 at 15). In his Objection, Petitioner states that his indictment "alleged that he 'swung trauma shears' at Riggs and Warren" and that he was convicted on that charge. (Doc. 41 at 4). He is mistaken. Count 1 of his Indictment states that Petitioner, "using a scissors, a deadly weapon or dangerous instrument, intentionally did place Todd Riggs in reasonable apprehension of imminent physical injury. . .The State further alleges that the offense charged in this count is a dangerous felony because the offense involved the

discharge, use, *or threatening exhibition* of a scissors, a deadly weapon or dangerous instrument, in violation of A.R.S. § 13-105 and 13-704." (Doc. 35-13 at 18) (emphasis added). The same acts were alleged with regard to Daniel Warren in Count 2. (*Id.*)

As the Magistrate Judge found, "Captain Jones's testimony that Petitioner did not swing the shears does not diminish that Petitioner held the shears in a manner to stop an alleged assault and protect himself." (Doc. 36 at 16). Petitioner testified that he grabbed the shears and "held them up" to defend himself. The jury was charged with resolving whether Petitioner was justified in acting in self-defense and they found he was not. Captain Jones's testimony would not have affected that resolution. The Court agrees with the R&R. Petitioner does not have a substantial claim that there was a reasonable probability the outcome of his trial would have been different had trial counsel interviewed and had Captain Jones testify. This objection is also overruled.

**3.    Ground Three**

In Ground Three of the Amended Petition Petitioner states that his "conviction was obtained in violation" of his right "to due process, fundamental fairness, and equal protection" under the Fourteenth Amendment when the trial court denied his motion to suppress without holding the state to its burden of proof and without providing him an evidentiary hearing. (Doc. 35-5 at 1). The R&R found that by failing to raise this claim on direct appeal, the claim is unexhausted and procedurally defaulted without excuse. (Doc. 36 at 20). It also rejected the substance of the claim, and clarified for Petitioner that the trial court was not required to hold an evidentiary hearing on his motion. The R&R states:

> An evidentiary hearing on a suppression motion is necessary "only when the moving papers allege facts with sufficient definiteness, clarity and specificity to enable the trial court to conclude that contested issues of fact exist." *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000). Petitioner's claim that he was "seized" by firefighters does not merit exclusion of evidence or dismissal of a case. *See United States v. Payner*, 447 U.S. 727, 735 (1980) (holding that supervisory powers do "not authorize a federal court to suppress otherwise admissible evidence on the ground that it was seized unlawfully from a third party not before the court.").

(Doc. 36 at 20).

Petitioner does not object to this finding, but instead states the "claim was technically exhausted throughout a full round of PCR Proceedings" and that any default should be excused because appellate counsel was ineffective for failing to raise it on direct appeal.  (Doc. 41 at 5).  Even assuming exhaustion of the claim, however, the Court agrees with the R&R's merit determination, to which Petitioner does not object.   The state court did not violate Petitioner's due process rights by failing to provide him an evidentiary hearing on his motion to suppress for the reasons stated in the R&R.  This objection is overruled.

### 4.      Ground Five and Six Objections

In Ground Five, Petitioner contends his conviction was obtained in violation of the Fourth and Fourteenth Amendments when he was arrested without probable cause.  He says Officer Calandra, the arresting officer, misrepresented what Captain Jones told him about the incident in his police report, and used the falsified police report in grand jury proceedings.  In Ground Six, Petitioner makes the related contention that his indictment was obtained by the perjured testimony Officer Calandra gave during grand jury proceedings, and thus he was denied due process.

The Magistrate Judge correctly found that "any error occurring at the grand jury proceeding was rendered harmless when Petitioner was found guilty as charged by a petit jury."  (Doc. 36 at 10 *citing United States. v. Mechanik*, 475 U.S. 66, 70 (1986) and *Williams v. Stewart*, 441 F.3d 1030, 1042 (9th Cir. 2006)).  The Magistrate Judge also said that considering the firemen's testimony at Petitioner's criminal trial, even if Officer Calandra misstated Captain Jones's representation of certain facts in his police report, e.g., that Petitioner was swinging the shears at Riggs and Warren as opposed to holding them in front of him, and that Petitioner "chased" Riggs and Warren out of the ambulance instead of being pulled out of the side door, the grand jury was not substantially misled. (Doc. 36 at 21 *citing United States v. Trass*, 644 F.2d 791, 796 (9th Cir. 1982) ("[d]ismissal of an indictment is required only in flagrant cases in which the grand jury has been overreached or deceived in some significant way")).  Petitioner does not distinguish the cases cited by

the Magistrate Judge or explain why this legal principle does not preclude his claims. Instead, he says the R&R ignores "all the evidence and corresponding exhibits" supporting these claims, and reiterates the arguments made in his Amended Petition. The Court has reviewed this claim *de novo* and disagrees with Petitioner. The R&R reconciles the purported inconsistencies between the police report and the testimony Captain Jones provided in Petitioner's civil rights trial in accordance with the applicable habeas standards. His objections to the recommendations on Grounds Five and Six are overruled.

### 5.    Ground Seven Objections

 In Ground Seven, Petitioner asserts his "conviction was obtained in violation of his right to a fair trial, equal protection of the law, and fundamental fairness under the U.S. Constitution's Fourteenth Amendment" when the state suppressed the "exculpatory" testimony of Captain Jones, and in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), failed to disclose it to him. (Doc. 35-4 at 13). The Magistrate Judge found that the claim failed on the merits: that because there was no reasonable probability that the outcome of the trial would have been different if Captain Jones would have testified in Petitioner's criminal trial (as determined in its analysis of Ground Two), Petitioner could not establish his testimony was material for *Brady* purposes. (Doc. 36 at 22). Notwithstanding this analysis, Petitioner says the "R&R did not fully address the merits of the impeachment aspect of the *Brady* claim." He then again reiterates the arguments in his Amended Petition. The Court finds that the R&R thoroughly explained how any allegedly impeachment testimony by Captain Jones at his criminal trial would probably not have changed the guilty verdict, and thus was not material under *Brady*. (*See* Doc. 36 at 13–16). This objection is overruled.

## IV.   Motion for Summary Judgment

After filing his Petition, Petitioner filed a Motion for Summary Judgment (Doc. 18). Therein, he argues the merits of his Petition and specifically argues that "there is no issue of material fact" that Riggs and Warren seized him in violation of his Fourth Amendment rights. (Doc. 18 at 8). Because the Court, in conducting its *de novo* review of the objected-

to claims in his habeas Petitions, concludes otherwise, the Court will also accept Judge Boyle's recommendation that the Motion for Summary Judgment be denied.

**V.    Conclusion**

After conducting its *de novo* review, the Court accepts the recommended decision within the meaning of Federal Rule of Civil Procedure 72(b) and overrules Petitioner's objections.  *See* 28 U.S.C. § 636(b)(1).

Accordingly,

**IT IS ORDERED** that Petitioner's Objections (Doc. 41) to the Report and Recommendation of Judge Boyle are **OVERRULED**, and the Report and Recommendation (Doc. 36) **ACCEPTED AND ADOPTED.**  Petitioner's Amended Petition for Writ of Habeas Corpus (Docs. 1, 35) is **DISMISSED, WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Summary Judgment (Doc. 18) is **DENIED**.

**IT IS FURTHERED ORDERED** that a Certification of Appealability and leave to proceed in forma pauperis is **DENIED** because the dismissal of the Petition is justified by a plain procedural bar, reasonable jurists would not find the ruling debatable, and Petitioner has not made a substantial showing of the denial of a constitutional right.

**IT IS FINALLY ORDERED** that the Clerk of Court shall enter judgment denying and dismissing Petitioner's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Docs. 1, 35) and terminate this action.

Dated this 16th day of September, 2022.

Honorable Diane J. Humetewa
United States District Judge